Case 24-5905, United States of America v. Jeffrey Scales, Argument Not to Exceed 15 Minutes per Side. Counsel, you may proceed for the appellant when ready. Good morning. May it please the Court, my name is Robert Kurtz on behalf of Jeffrey Scales, the appellant. I would request four minutes in rebuttal if it would please the Court. Of course. There are two issues before the Court today, and I believe that the primary issue for the Court's consideration is whether the affidavit in support of this search warrant established the minimally sufficient nexus necessary to support the application of the good faith exception. Prior to getting there, though, I would like to spend several minutes on probable cause. The, pardon me, the report and recommendation correctly held that the search warrant for the Aldergate Way apartment was not validly issued because it was not supported by probable cause, because the confidential informant's reliability was not attested to, because there was no nexus, and because the information provided by the informant was stale. I'll get into each of those, but one of the common themes that you will see as we develop this argument is that the reliability of the confidential informant is a crucial aspect, as is lack of police corroboration on any aspect of this investigation. The report and recommendation determined that there was no probable cause, and the government did not object to that at the trial court level. Accordingly, the district court only ruled on the good faith exception when it determined that the evidence should not be suppressed. For the first time on appeal, the government raised the issue of probable cause. In its brief, the government does not identify a single instance where any of the factual findings made by the lower court were clearly erroneous. Instead, the government's brief seems to voice general disagreement with the findings of the court or the ultimate outcome of that decision based on probable cause. Your point in going into the probable cause, which the government has clearly waived, is to say that it was so lacking in probable cause that there couldn't be a good faith reliance? My point in going into the probable cause argument is if the court determines that the government didn't waive it, I want to be able to address it. I do think that it was so lacking in probable cause that no reasonable officer could reasonably rely on the affidavit, even in good faith. And so I'm addressing it from both points. If the court would prefer me to just address the good faith exception, I'm happy to do that. Seems like maybe you might want to concentrate on that in as much as the government, until they showed up on their brief here, but pretty expressly said they weren't relying on probable cause. I agree, Your Honor. So I'll move then directly into the good faith argument. As we know, the good faith is only applied if there is a minimally sufficient nexus to tie the criminal activity to the place to be searched. In this case, the affiant does nothing to attest to the credibility, reliability, past history, or basis of knowledge of the confidential informant. There is only one line that any inference can be drawn, and that is that the confidential informant was in an intimate relationship with Wilson, who was the leader of the drug trafficking organization. What the affidavit lacks, though, is no indication that the confidential informant had any firsthand personal knowledge, that the confidential informant had ever been present at the Aldergate Way apartment, that she or he had ever observed any drugs stored at the Aldergate Way apartment. Can I ask you just a factual question? I'm not recalling. Did the confidential informant give the actual address, or did the confidential informant just say that there was an apartment in Knoxville that was rented by an Emily, and here's the picture? The latter. Only that there was an apartment in Knoxville rented by Emily, and here's a picture. Law enforcement, through its own databases, which anyone with the Internet could do, learned of the address through their own means, not through the confidential informant. What's interesting about the affidavit as it relates to that confidential informant, I would point out that it doesn't say that the affiant had a conversation or interviewed the confidential informant. It says that the confidential informant contacted investigators. We don't know if those were investigators in Detroit or in Knoxville. It's very unclear. So we don't know if the affidavit is relying on double hearsay or what the affidavit is relying on. And so in those situations where the affidavit does not attest to the reliability, credibility, veracity, and basis of knowledge, then there are cases that say that the court can rely on other things. Those other cases universally require intensive corroboration, intensive investigation by law enforcement. And what we see here is that there was absolutely no outside investigation or any sort of development of this case except for bare statements that are unsupported in the affidavit. I need to acknowledge that the affidavit does have one line that says that there has been, that Mr. Davis, I'm sorry, Ms. Davis and Mr. Scales are known subjects in an ongoing investigation. I think it's crucial to note that it does not say that they are known drug dealers. It just states that they are subjects. And so law enforcement at that point needs to investigate more. They need to do more to corroborate the information provided by the informant. But law enforcement didn't go get a warrant right after the confidential informant's information. They waited until they had more corroborating information in the form of what was learned during the traffic stop. The law enforcement waited 30 days with no intervening investigation whatsoever during that 30-day period as laid out in the affidavit. Instead, when the traffic stop occurred, that was based not on a drug investigation. It was based on an unrelated retail theft investigation that happened to see something suspicious that caught law enforcement's eye in the parking lot. There was no tie between that activity in the mall parking lot and the apartment, which was four miles away. And so they didn't do anything to investigate the residents or ties to the residents. They didn't do anything to investigate Mr. Scales or Ms. Davis. They didn't pull their criminal history. There's no mention in the affidavit that they have criminal history, any criminal history, or more specifically criminal history related to drug offenses, whether misdemeanors, felonies, whether possession offenses or trafficking offenses. And so that is something they could have done. And they don't describe them as known drug dealers. There is a series of cases that talks about the continuing and ongoing operations theory, and I think it's fair to address that here. In those cases, the courts have said that you can rely on, you can infer that drugs will be present at someone's home when there is a continuing and ongoing operations. But that's only under circumstances where there has been reliable evidence presented in the affidavit that there is a drug trafficking operation is ongoing, and it establishes a direct link between the activity at issue and the residents to be searched. We do not have that in this case. There are some exceptions to that. Courts have looked to instances where defendants have engaged in regular or repetitive sales of large quantities of drugs. There is no mention in the affidavit that that is present here. Instead, we have one isolated incident of what is alleged to be a drug trafficking, or a drug transaction that is isolated from the house. And in McCoy, the court said that one instance does not make an ongoing and continuing theory. It has to be more than that. Other circumstances can be the circumstances of the defendant's arrest. And an example of that would be the defendant is arrested near an operational, secure operational base. And the courts have inferred that you could then probably find evidence of drug trafficking in the person's home. Again, we don't have a secure operational base. In fact, the report and recommendation found that this was more of a nomadic thing at best and that there was no connection to the house. There's also instances where it's almost parallel facts. The courts look to if it's lacking here, then corroboration can fill in the gaps. Here we have an instance where we don't have credibility and we don't have corroboration. So there are other circumstances that will fill those gaps. We don't have those here. We don't have a connection to the house. We don't have firsthand observations. We don't have attempts by law enforcement to surveil. How does some of the things that are found in the traffic stop not corroborate what the confidential informant said and provide some of the reliability that you say is lacking? She says that these people, there's a drug operation going on, and when they're in Knoxville, they operate out of this apartment, and these are the people involved. Then they find the people who she has mentioned. They find them with drugs stored in a way for distribution. Doesn't that start to corroborate? I believe there's a key that is found to the apartment. Doesn't that also start to corroborate? I mean, I understand what you're saying about the confidential informant, and I kind of also understand what you're saying about the one traffic stop and finding drugs one time, but we have both of these things going on in the case, and I think we have to look at it together, and indeed both are detailed in the warrant affidavit. We do have to look at the totality of the circumstances. I agree, but the informant's information is too attenuated and too generic. It doesn't indicate a time period that when these drugs were stored at the house, how the drugs are stored, or that she ever observed them being stored. There is no observation by law enforcement showing a direct to and from like we've seen in Sanders and other cases prior to the transaction or after the transaction. There's no surveillance of any foot traffic or unregular foot traffic at that residence, and so I think that in the totality of the circumstances, it's too attenuated, and we cannot rely on that. I think my time is now up, and I'll try to address any other questions. We'll have your rebuttal. Thank you. May it please the Court, Sam Fitzpatrick for the United States. The district court should be affirmed for two reasons. First, the search warrant's affidavit established probable cause to search the defendant's apartment, and second, officers relied on the warrant in good faith. And, Your Honors, I'd like to address first the issue of waiver because I think that might be a concern of the court. The United States has not waived the probable cause issue, and the reason is because I would point the court to its decision in Van Winkle, and the citation for that is 645F3365. In that case, under this court's case law, the court held that a party who substantially prevails in a magistrate judge's recommendation does not waive the right to appeal secondary issues resolved against him by failing to object to the recommendation. And specifically in Van Winkle, it was an appeal of a 2255, and the magistrate judge issued a report and recommendation to deny the defendant's 2255, and the United States did not object to that recommendation, even though the magistrate judge did not agree with the United States' procedural default argument. And on appeal, the United States again raised the procedural default argument, and this court held that the United States- In the Van Winkle case, did the United States explicitly tell the district court that it was not challenging the procedural default ruling of the magistrate judge? I'm not certain, Your Honor, but I think by action of not objecting, that is an acknowledgment to the court that the United States is not going to contest this specific issue. I mean, I think we, in our case law, make a distinction between an affirmative indication that you're not going to contest something versus just maybe we forgot or we're just not saying anything. We have a distinction between, for example, like waiver and forfeiture, which kind of hinges on this idea of whether there was kind of an express indication that you're not advancing an argument. We have a very strong indication of that in this case with what was represented by the United States to the district court. Well, I think, I mean, the representation that the United States is not going to raise this argument is different from a representation that the United States agrees that there is not probable cause. I think in that case, that would be waiver if the United States had said, we agree there's not probable cause in this instance, versus the United States saying, Your Honor, we're not going to raise this issue. So you can't waive an issue unless you actually agree with it, with how the other side says? I don't think that's what our case law bears out. My understanding of waiver is that it's the intentional relinquishment of a known right. And so to tell the court that we're not going to present an argument, I think is different than telling the court, we agree that there's not probable cause in this instance. In other words, there's no difference between waiver and acquiescence? I think, Your Honor, I mean, the difference would be between, I think the difference would be that if we're waiving something, we're agreeing that this argument lacks merit, versus telling the court that we're not going to present an argument. I don't think that's the intentional relinquishment of a known right. If the shoe were on the other foot, is that what you'd be arguing? Well, according to the Van Winkle case, yes. I'd like to quote another portion from that. The magistrate judge ruled in the government's favor on the merits, and the government merely chose not to object to this finding by raising an alternative ground for finding in its favor. Probable cause was an alternative ground for denying the defendant's motion to dismiss, and by not objecting to that, and by telling the district court that we were not going to present an argument to that effect, did not waive it under this court's decision in Van Winkle. Well, Your Honors, my friend focused a lot on the informant and the informant's reliability, so I would like to make a few comments about that. One is that all of these considerations, reliability and veracity and basis of knowledge, these are relevant considerations, but there's no formula to determine the value of an informant's information. And here there was substantial corroboration, and I'd like to focus on there were five points of corroboration that I think were found. Number one, the informant said that, and Your Honor, I would like to speak to your point about in reviewing for oral argument, I agree, the best reading of the affidavit is that the informant provided information that allowed the investigators to discern the precise address. That is correct, and I recognize that my brief said otherwise, and that's not entirely accurate. And I do agree that that's the best reading of the affidavit. Thank you for clarifying. Yes, Your Honor. The five points that I think of corroboration are, one, the informant said that Scales and Davis were using an apartment, and it was rented by someone named Emily and provided a photograph of Emily, and investigators corroborated that. The person in the photograph was Emily Long, who rented apartment 4107. The second point of corroboration is that the informant said that there was a connection between Scales and Davis, that they were living together in this apartment, and investigators corroborated that when they found Scales and Davis together in the Jeep. The third point of corroboration is that the informant said that Scales and Davis were trafficking drugs, and investigators corroborated that when they witnessed Scales and Davis involved in a suspected drug transaction, and then when they caught Scales and Davis with drugs, guns, money, and all the indicators of drug trafficking. The fourth point of corroboration is that they lived together in this apartment. How does finding them together in the Jeep corroborate that? It doesn't corroborate specifically that they lived in the apartment. It corroborates that there was a connection between the two. Maybe I just misunderstood what you were saying. If I misspoke, I apologize. The fourth point of corroboration was that the defendant identified the specific drug. The defendant said heroin, which is the street term for heroin or fentanyl or any mixture of the two, rather than, say, marijuana or prescription pills, and officers corroborated that during the traffic stop when they found six ounces of heroin. And the fifth point of corroboration is that Scales and Davis were connected to the apartment, and investigators corroborated that when they found the key to the apartment during the traffic stop. And so this court has said in a couple of different instances that when there is substantial corruption It's not fleshed out in the affidavit. I'm curious, how did they know the key was to the apartment? That's a good question, Your Honor. It's not clear from the record. At the suppression hearing, there was testimony from the investigator who said that he remembered that there was A fob on it or something? There was a fob and there was a sticker or some tape on the backside of that. But he said that he couldn't recall if there was anything written on it. And so we don't know from the record exactly why, but we do know that the affiant was confident enough in that fact to swear to it under penalty of perjury. And the magistrate judge did specifically consider that and determined that there was no substantial basis to believe that that was false or misleading. One other comment I'd like to make on the good faith issue, Your Honors, is that good faith is a very low bar. In all events, the affidavit established that minimum sufficient connection, both through the informant's statements, which directly placed drug trafficking in the apartment, and through the key that officers found during the traffic stop. In addition, Detective Sharp, in his training and experience, he knew that drug traffickers often keep evidence of drug trafficking in places that they control, but that are titled in other people's names, which independently corroborates what was going on here, that the apartment was rented by Emily Long, but used by Scales and Davis as a place to store heroin and bulk cash. One comment about there's some discussion of ongoing drug trafficking, Your Honor, and I think there are indicators of ongoing drug trafficking here. I know the court's precedents sometimes point in different directions, and ultimately all of these decisions are so fact-intensive that one precedent isn't always a useful precedent for another. But the court has laid down some basic guidelines, and one is that criminals are likely to keep evidence of crimes in their homes, but status as a drug trafficker alone, that's not enough to search a drug trafficker's home. But when there's evidence of ongoing drug trafficking, that can create probable cause to search the home of a known drug dealer. And here, there was evidence in the affidavit of ongoing drug trafficking. As my friend points out, the affidavit asserts that Scales and Davis were known subjects in an investigation into an ongoing drug conspiracy. The affidavit asserts that this investigation had been going for 18 months, and more specifically, the informant alleged that Wilson, Scales, and Davis were operating a drug trafficking. I mean, read in a common-sense manner, we're operating in the phrase that when they're in Knoxville, they use the apartment to store heroin and bulk cash. I think read in a common sense rather than a hyper-technical manner, those tend to show that this is an ongoing operation. Unless I misunderstand your friend's argument, he seems to be saying that there needed to be a whole lot more detail in the affidavit in order for the officer to be able to rely on it in good faith, rely on the warrant in good faith. And you appear to be saying, yeah, maybe there could have been more, but there didn't need to be anymore when what we're looking at is not necessarily probable cause, but the good faith exception. How much detail do we expect the officer relying on the warrant to look for in an affidavit when a judge of some variety has issued the warrant? Well, Your Honor, the cases say that so long as the evidence establishes some connection, no matter how slight or how remote, that that's sufficient for an officer to rely on it, for objectively reasonable reliance on the warrant. The cases also contrast that with the cases that examine bare-bones affidavits, and those cases say that an affidavit's bare-bones when it's completely devoid, when there are no facts, when it's simply conclusory. For example, when an officer says just as a conclusion, I believe that there's probable cause in this place, and offers nothing, no support, no factual support to explain why is there a connection between the crime being investigated and the place that's to be searched. And here that's simply not the case. There are connections between drug trafficking in the apartment. The informant said that drug trafficking was occurring in the apartment. Officers caught the defendants with all the indicators of drug trafficking and with a key to the apartment. And the key to the apartment is especially important in this case because it shows that not only was their drug trafficking recent, but their connection to the apartment was recent also. Thank you. Do you have any questions? No. Thank you. Okay. Thank you, Your Honor. In conclusion, I'd ask that this Court should affirm. Thank you. The report and recommendation deals with the key, and it states, the report and recommendation finds that the key did not have markings on it, but it determined that it did not rise to the level of a Franks hearing, and it moved on and addressed the probable cause issue on other grounds. What the problem with this affidavit is is that the confidential informant provided no information that was predictive. It didn't allow the officers to do anything like in Illinois v. Gates. Scales is going to be at Westtown Mall on November 10th. He's going to be in a black Jeep, or even something more generic, that there will be a person in a black Jeep at the mall on November 10th. And so really they're just relying on information that is completely generic, secondhand, and unsubstantiated on every level. They aren't investigating Scales. This affidavit is problematic in so many ways. There's a heading that says, Reliable Confidential Source, but the affiant does not list any information that would support that finding. It's just a bare-bones assertion with no facts underlying or supporting it. Likewise, this is an 18-month ongoing investigation with absolutely no facts, no evidence, no information that supports that there actually has been an investigation. What law enforcement has done, what intelligence has been shared or gathered, what they have learned, they don't know. They don't know anything. And so this is all a mishmash of information that is thrown together at the last minute, looked at in hindsight, rather than predictive to forecast activity. And that really, in this instance, I believe, undercuts the validity of the confidentiality, the reliability, the veracity, the validity of the confidential informant. The identification of the apartment is the barest of corroboration. I mean, it's not that's that. It's just that Emily lived there. It didn't identify that firsthand knowledge or personal observations that there was drug activity or any illegal activity at that apartment, just that they lived there. And they're a rumor, nothing more. And so this affidavit is full of conclusions and assertions without an appropriate foundation. I think ultimately this case is more akin to Weaver. And I've tried to set out in both my initial brief and my responsive pleading the lines of cases and how those cases are delineated. This is a case that falls well below the standard set in Weaver. We don't have a reliable informant. We'd have an informant who wasn't known to the magistrate, who wasn't identified. We don't have the direct to and from that we've seen in a multitude of other cases. We don't have the extensive, time-consuming surveillance investigation that law enforcement routinely conducts in these cases. And for those reasons we believe that the district court erred and we would ask the court to reverse its opinion. Thank you. Thank you. My understanding is you're one of our attorneys on our CJA panel.  We very much appreciate your service. Thank you for saying that. Great. The case will be submitted.